USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 19 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

Milton Greene, *et al.*,

                      Plaintiffs,

      -v-

Subcontracting Concepts, L.L.C., *et al.*,

                      Defendants.

------------------------------------------------------------X

13 Civ. 01500 (AJN)

MEMORANDUM &
ORDER

      Plaintiffs Milton Greene and Jean Baptiste Turenne bring this putative class action, alleging failure to pay minimum wage and overtime, under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Pending before the Court are the motion to dismiss and compel arbitration jointly filed by Defendants Subcontracting Concepts, LLC ("SCI"), Robert Slack, and Chelsea Industries, Inc., d/b/a Same Day Delivery ("Same Day Delivery"), Dkt. No. 24, and the motion to conditionally certify a FLSA collective action filed by Plaintiffs, Dkt. No. 21. For the reasons that follow, Defendants' motion is GRANTED and Plaintiffs' motion is DENIED.

## I. BACKGROUND[1]

      Defendants SCI and Same Day Delivery are "in the courier business." Compl. ¶ 20. Same Day Delivery is a New York City-based courier business and "client" of SCI, which provides "payment processing and other back-office services" to companies in the courier and light trucking industries. Compl. ¶¶ 20-22; Weinstein Decl. ¶ 2. Individual Defendants

---

[1] The factual background draws from Plaintiffs' Complaint and from affidavits and accompanying exhibits submitted by the parties. For purposes of deciding the motion to dismiss, the allegations in the Complaint are taken as true.

1

Karmoko Doe and Omar Doe "are the owners, operators, and managers of Same Day Delivery," and Individual Defendant Robert Slack is the President and Chief Operator Officer of SCI. Compl. ¶ 8.

Plaintiffs Greene and Turenne are couriers who "deliver[ed] groceries to homes throughout Brooklyn, New York." Compl. ¶ 5. This work was directly overseen by Same Day Delivery, which "set[] schedules and wage rates [and] determin[ed] policies with respect to payroll." Compl. ¶ 8. SCI, however, "set the terms of the Owner/Operator Agreement" entered into by Plaintiffs, and was additionally "responsible for hiring and firing employees, setting schedules and wage rates, [and] determining . . . policies with respect to payroll." Compl. ¶ 9.

Turenne signed the Owner/Operator Agreement ("Agreement") with SCI on February 15, 2012, and Greene signed an identical version on May 26, 2012. *See* Fidopiatsis Decl. Exs. A, B. Paragraph 26 of the Agreement purports to govern "any dispute, claim, question, or disagreement arising from or relating to this agreement or the breach thereof." Fidopiatsis Decl. Ex. A ¶ 26. The paragraph further provides that any such dispute, claim, question, or difference that exceeds the "jurisdictional maximum for small claims courts within the locality of the Owner/Operator's residence shall be finally settled by arbitration in accordance with the Federal Arbitration Act." Fidopiatsis Decl. Ex. A ¶ 26. At the end of the Agreement, right above the signature block, is stated: "THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION . . . WHICH AFFECTS YOUR LEGAL RIGHTS AND MAY BE ENFORCED BY THE PARTIES." Fidopiatsis Decl. Ex. A.

Plaintiffs filed their class and collective action complaint on March 6, 2013, alleging, *inter alia*, violation of the minimum wage and hour provisions of FLSA and NYLL. *See* Dkt. No. 1. The instant motions were filed on August 14, 2013.

## II. MOTION TO COMPEL ARBITRATION

Defendants argue that, pursuant to the terms of the Agreement and the Federal Arbitration Act ("FAA"), Plaintiffs' claims must be dismissed and submitted to arbitration. *See* Def. Br. 3. The FAA provides that an agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This text reflects the overarching principle that arbitration is a matter of contract," pursuant to which "courts must 'rigorously enforce' arbitration agreements according to their terms." *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013) (citing *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010); *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Accordingly, a court should order arbitration if it is satisfied that the agreement to arbitrate: (1) was validly formed; (2) is enforceable; and (3) applies to the dispute at issue. *See In re A2P Antitrust Litig.*, -- F. Supp. 2d --, 2013 WL 5202824, at *5 (S.D.N.Y. 2013) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 130 S.Ct. 2847, 2858-59 (2010)).

### A. As to SCI

While refusing to "admit that [the Agreement] requires that they arbitrate the claims brought in this lawsuit," Plaintiffs do not otherwise make any arguments opposing arbitration of their claims against SCI. Pl. Opp. 1. It is, moreover, apparently undisputed that the Agreement was validly formed and generally enforceable. *See* Pl. Opp. 1.

Nor can there be any dispute that the arbitration provision applies to Plaintiffs' dispute with SCI. By its terms, the arbitration provision broadly applies to "any dispute, claim, question, or disagreement arising from or relating to [the Agreement] or the breach thereof." Agreement, Fidopiastis Decl. Ex. A ¶ 26. With such a "broad arbitration agreement, there is a presumption

of arbitrability overcome only if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute,'" with any "[d]oubts... resolved in favor of coverage." *Grenawalt v. AT&T Mobility, LLC*, 937 F. Supp. 2d 438, 456 (S.D.N.Y. 2013) (quoting *Duane Street Assocs. v. Local 32B-32J*, No. 00 Civ. 3861 (SHS), 2000 WL 802889, at *2 (S.D.N.Y. June 21, 2000)). Under this standard, Plaintiffs' claims against SCI are plainly arbitrable. Accordingly, Defendants' motion to compel arbitration is granted as to those claims.

### B. As to Same Day Delivery

Plaintiffs do, however, vigorously contest the applicability of the arbitration agreement to their claims against Same Day Delivery. *See* Pl. Opp. 1. Specifically, Plaintiffs argue that their claims against Same Day Delivery are not subject to the arbitration agreement "because Plaintiffs never signed an arbitration agreement with Same Day Delivery and had no reason to know or suspect that the [Agreement] that they signed with [SCI] would require them to arbitrate any dispute with Same Day Delivery." *Id.*

#### 1. Arbitrability of Question of Arbitrability

As an initial matter, the Court must address whether the arbitrability of Plaintiffs' claims against Same Day Delivery is itself a question reserved for arbitration. *See* Def. Br. 7; Pl. Opp. 3-5. Although doubts as to the scope of an ambiguous arbitration agreement should generally "be... resolved in favor of arbitration," doubts as "to *who* determines arbitrability—that is, the arbitrability of the question of arbitrability" are presumptively resolved in favor of resolution by courts. *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (2009); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996)) (emphasis in original). Thus, "the issue of arbitrability may

4

only be referred to the arbitrator if 'there is *clear and unmistakeable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability. . . be decided by the arbitrator.'" *Id.* (quoting *PaineWebber Inc.*, 81 F.3d at 1198-99) (emphasis in original).

The arbitration provision at issue in this case is completely silent as to what entity is charged with deciding arbitrability. *See* Agreement, Fidopiastis Decl. Ex. A ¶ 26. Such silence cannot constitute "clear and unmistakeable evidence" of the parties' intent to submit the question of arbitrability to the arbitrator. *Bell v. Cendant Corp.*, 293 F.3d at 566. *Cf. Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208-09 (2d Cir. 2005) (finding intent to submit questions of arbitrability to the arbitrator when agreement expressly referred to rules stating that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction"). Under these circumstances, the question of arbitrability must be decided by the Court.

2. *Estoppel*

Having determined that the question of arbitrability is before it, the Court turns its attention to whether the dispute between Plaintiffs and Same Day Delivery is indeed arbitrable. In opposition to arbitration, Plaintiffs argue that SCI's relationship with Same Day Delivery is not "of a nature that justifies a conclusion that [Plaintiffs] should be estopped from denying" that they are obligated to arbitrate their dispute with Same Day Delivery. *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d Cir. 2008); *see* Pl. Br. 5-8 (arguing that Defendants' contractual relationship is not the type giving rise to estoppel).

In the Second Circuit, a non-signatory may enforce an arbitration agreement against a signatory if "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed," and, additionally, the nonsignatory's

5

relationship with the signatory is sufficiently close to justify estoppel. *Sokol Holdings*, 542 F.3d at 358-59. For purposes of this motion, Plaintiffs "do not dispute that the issues that Same Day Delivery seeks to resolve are related to the agreement signed by Plaintiffs" and SCI. Pl. Opp. 5-6.

Plaintiffs instead focus on the relationship among the parties, arguing that "the cases where [the Second Circuit] has permitted a non-signatory to compel arbitration" are "based on the corporate relationships between the signatory and non-signatory movants." Pl. Opp. 6. That is, Plaintiffs argue that estoppel principles justify arbitration as to disputes with non-signatories only "in cases involving subsidiaries, affiliates, agents, and other related business entities, where 'a non-signatory defendant owns or controls a signatory defendant,' or where the non-signatory is an employee or disclosed agent of the signatory entity.'" Pl. Opp. 7 (citing *Ross v. American Express Co.*, 547 F.3d 137, 244 (2d Cir. 2008); *Simply Fit of N. America, Inc. v. Poyner*, 579 F. Supp. 2d 371, 382 (E.D.N.Y. 2008)). Non-signatory Same Day Delivery's "client" relationship with signatory SCI, Plaintiffs contend, is not sufficiently "deep[]" to "give Plaintiffs reason to believe, without specific notice, that an agreement with SCI would bind [them] as to Same Day Delivery." Pl. Opp. 8.

Plaintiffs' argument against estoppel is, however, foreclosed by *Ragone v. Atlantic Video at the Manhattan Center*, 595 F.3d 115 (2d Cir. 2010). In that case, the Second Circuit held that non-signatory ESPN could enforce an arbitration agreement signed by the plaintiff and co-defendant AVI, notwithstanding the absence of any alleged corporate relationship between ESPN and AVI (or ESPN and the plaintiff). *See* 595 F.3d at 126-28. Rather, the Second Circuit found estoppel appropriate because the plaintiff's complaint made it "plain that when [she] was hired

by AVI, she understood ESPN to be, to a considerable extent, her co-employer." 595 F.3d at 127.

In this case, Plaintiffs' pleadings likewise make plain their understanding that non-signatory Same Day Delivery and signatory SCI were their co-employers: Plaintiffs allege identical FLSA and NYLL claims against Same Day Deliver and SCI, both of which are alleged to be Plaintiffs' "employers." *See, e.g.,* Compl. ¶ 57 (alleging that all "Defendants" improperly classified employees as independent contractors"); Pl. Opp. 9 ("Plaintiffs do not assert that they were only employees of Same Day Delivery and not SCI."). Plaintiffs, for example, allege that Robert Slack, as "the President and Chief Operating Officer for SCI," "set terms of [the Agreement] entered into between SCI and various drivers, including Plaintiffs and was responsible for hiring and firing employees, setting schedules and wage rates, determining SCI's policies with respect to payroll and otherwise running the business of SCI." Compl. ¶ 9. Having thus alleged that they were employed by both non-signatory Same Day Delivery and signatory SCI, by virtue of the Agreement containing the arbitration clause, Plaintiffs are estopped from denying their obligation to arbitrate their dispute with Same Day Delivery. *See Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 75 n.6 (S.D.N.Y. 2012) (agreeing that plaintiffs would be estopped from refusing to arbitrate dispute with non-signatory, "given the Amended Complaint's pervasive allegations of interdependent and coordinated misconduct between nonsignatories and signatory").

The Court is not persuaded otherwise by Plaintiffs' argument that they "were given no reason to suspect that their relationship with Same Day Delivery [was] changed following the signing of the SCI Contract," which occurred after Plaintiffs had already been working with Same Day Delivery "for a substantial period of time." Pl. Opp. 9. According to Plaintffs, "[t]he

7

only significant differences in Plaintiffs' employment after they signed the first agreement with SCI were that Plaintiffs began to receive paychecks bearing SCI's logo and had deductions taken out of their paychecks purportedly by SCI." *Id.* The allegation that the Agreement caused Plaintiffs to be paid by SCI for the work they did for Same Day Delivery, however, is not at all inconsistent with the Court's conclusion that Plaintiff understood Same Day Delivery to be, "to a significant extent, [their] co-employer." *Ragone*, 595 F.3d at 127. To the contrary, these allegations only increase the significance of Same Day Delivery's relationship with Plaintiffs in relation to the Agreement they signed with SCI, further supporting the Court's conclusion that that relationship between the two defendants was sufficiently close in nature to justify arbitration of Plaintiffs' claims against both. *Cf. Id.* at 128 (estopping plaintiff from denying obligation to arbitrate with nonsignatory where she alleged "knowledge that she would extensively treat with [non-signatory] ESPN personnel").

### 3. Third Party Beneficiary

Defendants further argue that Same Day Delivery may enforce the arbitration agreement as a third-party beneficiary to that agreement. *See* Def. Br. 6-7. Having found that Same Day Delivery can enforce the arbitration agreement under estoppel principles, the Court need not reach this question.

### 4. Applicability to Dispute Against Same Day Delivery

The arbitration provision applies to Plaintiffs' dispute against Same Day Delivery for the same reason that it applies to Plaintiffs' dispute against SCI: their claims plainly "relat[e] to" the Agreement, as set forth by the terms of the arbitration provision. *See* Agreement, Fidopiatsis Decl. Ex. A ¶¶ 15, 26. This conclusion is further compelled by the longstanding principle that courts must give "due regard. . . to the federal policy favoring arbitration" and resolve

"ambiguities as to the scope of the arbitration clause itself. . . in favor of arbitration." *Volt Info. Scis, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474-75 (1989); *see also Grenawalt*, 937 F. Supp. 2d at 456 (S.D.N.Y. 2013). Defendants' motion to compel arbitration is, accordingly, granted as to Plaintiffs' claims against Same Day Delivery.

### III. MOTION FOR CLASS CERTIFICATION

The Court having granted Defendants' motion to dismiss and compel arbitration, Plaintiffs' motion for conditional certification and authorization to issue notice to similarly situated parties is denied.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss and compel arbitration is GRANTED, and Plaintiffs' motion for conditional certification is DENIED. This resolves Docket Numbers 21 and 24. The Clerk of Court is requested to terminate this case.

SO ORDERED.

Dated: March 19, 2014
New York, New York

_____
ALISON J. NATHAN
United States District Judge